IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTINE ALICE RUGGLES, ) CASE NO.  3:22CV2024
)
Plaintiff, )
) JUDGE JEFFREY J. HELMICK
vs. )
) MAGISTRATE JUDGE
) JONATHAN D. GREENBERG
COMMISSIONER )
OF SOCIAL SECURITY, )
)
Defendant. ) **REPORT & RECOMMENDATION**
)

Plaintiff, Christine Alice Ruggles, ("Plaintiff" or "Ruggles"), challenges the final decision
of Defendant, Commissioner of Social Security ("Commissioner"), denying her applications for
Disability Insurance Benefits ("DIB") under Title II of the Social Security Act,42 U.S.C. §§ 416(i),
423, 1381 et seq. ("Act"), and for Supplemental Security Income ("SSI") under Title XVI of Act.
This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned
United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a
Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends
that the Commissioner's final decision be AFFIRMED.

## I.   PROCEDURAL HISTORY

In October 2020, Ruggles protectively filed applications for DIB and SSI, alleging a
disability onset date of September 23, 2020, and claiming disability due to degenerative disc disease
("DDD"), fibromyalgia, one kidney, and chronic pain. Transcript ("Tr.") at 73. Her applications

1

were denied initially and upon reconsideration, and Ruggles requested a hearing before an administrative law judge ("ALJ").  (Tr. 78, 84, 95, 105, 144)

In November 2021, ALJ Earl Ashford held a telephonic hearing on Ruggles' applications. (Tr. 37-66) Ruggles, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On November 26, 2021, the ALJ issued a written decision finding Ruggles was not disabled. (Tr. 12-32) The ALJ's decision became final on September 14, 2022, when the Appeals Council declined further review. (Tr. 1)

Ruggles then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1)  The parties have completed briefing in this case. (Doc. Nos. 7 & 11) In her brief, Ruggles asserts three assignments of error:

> 1. The ALJ erred when he failed to find that the opinions of the treating sources were consistent with and supported by the medical evidence and failed to incorporate the stated limitations into his RFC.

> 2. The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Ruggles's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

> 3. The ALJ committed harmful error at Steps Four and Five of the Sequential Evaluation when he improperly found that Ruggles could perform her past work as a sorter.

(Doc. No. 7 at 1)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Ruggles was born in 1971 and was 49 years-old at the time of her alleged disability date, making her a "younger person," under social security regulations. (Tr. 19) *See* 20 C.F.R. § 404.1563 and 416.963. However, by the time of her hearing, Ruggles age category changed to "closely

approaching advanced age." (*Id.*) She has at least a high school education. (Tr. 19) She has past relevant work as a sorter. (Tr. 18)

**B.      Relevant Medical Evidence**

**1.      Treatment Notes**

In the year leading up to Ruggles' alleged onset of disability (September 20, 2020), she sought treatment for back pain at Advanced Neurological Associates, who diagnosed her with lumbar and cervical degenerative disc disease ("DDD"), lumbar radiculopathy, and cervical spondylosis, and administered epidural pain injections (Tr. 325, 331, 337-38). The month prior to her alleged onset date, Ruggles visited Scott Kaple, D.O., with gastrointestinal symptoms and it was noted that she recently had a  cholecystectomy (gallbladder removal surgery). (Tr. 383) Mental and physical status exams were normal and she reported that she had no back or joint pain. (*Id.*) Dr. Kaple discontinued her Zoloft, due to possible gastrointestinal side effects and because Ruggles reported she did not feel depressed. (Tr. 382-85).

In November 2020, Ruggles presented to the emergency  department ("ED") due to dental pain. (Tr. 512) Physical and mental status exams yielded normal results. (Tr. 513) Ruggles subsequently had three teeth extracted and the day after surgery, December 10, 2020, she returned to the ED complaining of post-surgical dental pain. (Tr. 435, 515) On exam, she presented with a normal range of motion and no psychiatric or neurological abnormalities. (Tr. 436-37, 516)

On December 14, 2020,[1] Ruggles sought care with Kathryn R. Howell CNP, for complaints of low back pain with nausea that began a few days prior. (Tr. 446) She exhibited decreased range of motion in her spine, tenderness, and a slow, steady gait. (Tr. 447) She ambulated without an

---

[1] Ruggles brief states that she "appeared in the emergency room on December 14, 2020 with complaints of back pain. (Doc. No. 7 at 2 citing Tr. 446) However, the record shows that Ruggles presented to the ER on December 10, 2020, for dental pain with no complaints of back pain. On December 14, 2020, Ruggles sought care with family medicine for a back strain that Ruggles reported occurred a few days prior.

assistive device and reported no neck, shoulder, or knee pain. (Tr. 446-47) She was diagnosed with a low back strain/sprain and prescribed a tapered steroid, a muscle relaxant, an anti-nausea medication. (Tr. 447) Mental status exam was normal. (*Id.*) Ruggles began physical therapy shortly thereafter and continued her physical therapy until March 28, 2021 (Tr. 518-528).

On January 18, 2021 she presented to the ED complaining of lower back, neck and bilateral leg pain after falling and landing on her tailbone four days prior. (Tr. 438) On examination, she had diffuse tenderness across the spine, full range of motion with difficulty, good sensory to bilateral lower extremities, no swelling or tenderness (*Id.*). No psychological abnormalities were noted. (*Id.*) A CT scan found no acute injuries, but a notation indicated that  moderate degenerative changes of the C5-C6 with mild to moderate central spinal stenosis and left neural foraminal narrowing. (Tr. 440, 441) She was diagnosed with a low back sprain and prescribed a muscle relaxant, a 3-day oral steroid, and pain medication. (Tr. 439-40)

On February 9, 2021, Ruggles complained of back and neck pain. (Tr. 449) She told Dr. Kaple that she had recently fallen a few times on ice. (Tr. 449) She also reported back and shoulder pain since her January 2021 fall and reported "feeling down" due to her pain. (*Id.*) She expressed mood swings, depression, and lack of energy. (*Id.*) A mental status exam yielded normal mood and affect; a physical exam found reduced left-handed grip strength (4/5), but was otherwise normal (range of motion, heal toe walking, flexion and extension). (Tr. 450) Dr. Kaple restarted Ruggles on Zoloft for her mood and prescribed Tramadol (pain medication) and a tapered steroid for her physical pain. (Tr. 450-51) She was assessed with other chronic pain, cigarette smoking, dysthymia, cervicalgia, strain of muscle and tendon of the rotator cuff of left shoulder, dorsalgia of thoracic region, osteoarthritis of thoracic spine, and lumbar degenerative disc disease (Tr. 450-452).

4

Ruggles was treated in the ED on May 26, 2021, for progressive lumbar pain. (Tr. 558) She reported experiencing the pain since she fell six feet off of a ladder a week prior. (Tr. 558) An exam noted some lumbar tenderness and poor range of motion secondary to pain, she was diagnosed with lumbar strain. (Tr. 559-60) The physical and mental examination findings were otherwise unremarkable. (Tr. 558-59) In July 2021, Ruggles again presented to the ED due to pain resulting from a fall. (Tr. 563) Ruggles was assessed with closed head injury, neck muscle strain, and paresthesia. (*Id.*) A cervical spine CT scan noted no acute injuries, but documented that her cervical spondylosis, got "superiorly[2] changed" since January 2021. (Tr. 565)

## 2.    Medical Opinions

**Consultative Exam.** The State Agency referred Ruggles for a consultative examination on June 18, 2021, with Charles F. Misha, Ph.D. (Tr. 552-556). Dr. Misha stated that Ruggles walked into the exam room "with an unremarkable gait and without the use of any assistive devices." (Tr. 553) Ruggles reported a 20-year history of depression, but stated that Zoloft helps with the depression and she received "much benefit" from working with a therapist. (*Id.*) She reported getting along with well coworkers and supervisors in the past and had good attendance at work until her medical problems worsened. (Tr. 554) Ruggles presented with a blunted and depressed mood and rated her anxiety as a 5-6 out of 10. (Tr. 554) Dr. Mischa diagnosed Ruggles with major depression recurrent moderate and other specified trauma and stressor related disorder (Tr. 555). Dr. Mischa opined that Ruggles had minimal problems in all functional categories, aside from understanding, remembering, and carrying out instructions. (Tr. 556) In that category, Dr. Mischa stated:

---

[2] Superiorly: "In a higher position toward the head, away from the feet."
https://dictionary.cambridge.org/us/dictionary/english/superiorly (last accessed June 29, 2023)

> The claimant is a high school graduate and has worked as a laborer and supervisor. She complained of memory problems and stated that she had difficulty in her job doing inventory. She is probably functioning in the average range of intellectual ability but nevertheless may require some assistance in order to understand, remember, and implement ordinary instructions.

(*Id.*)

**State Agency Review.** On January 7, 2021, agency consultant, Steve McKee, M.D., reviewed Ruggles' records and opined that she could stand/walk or sit for about 6 hours in an 8 hour workday; could occasionally lift/carry up to 50 pounds, and frequently lift/carry up to 25 pounds. Dr. McKee noted that a CT confirmed Ruggles' DDD but that exams showed normal gait, strength, and range of motion, with no focal neuro deficits. (Tr. 76-77) That same day, Irma Johnson, Psy.D., reviewed Ruggles mental health records and determined that Ruggles had no mental limitations. (Tr. 81) Dr. Johnson stated that the records showed that Ruggles had full control of her symptoms, but had discontinued Zoloft a few months prior; had consistently normal mental status exams; and she did not report any mental symptoms affecting her daily functioning.

At the Reconsideration stage of Ruggles' application in May 2021, Dr. Lynne Torello noted that updated treatment records warranted changes to the prior administrative medical findings. (Tr. 92, 102) In particular Dr. Torello opined Ruggles had a reduced carry/lift ability (20 pounds on occasion, 10 pounds frequently), but affirmed the 6-hour stand/walk and sit limitations. (*Id.*) Ruggles psychological RFC findings were also adjusted at the reconsideration stage. Cindy Matyi, Ph.D. found moderate limitations in all four mental limitation categories: (i) understand, remember, or apply information; (ii) interact with others; (iii) concentrate, persist, or maintain pace; (iv) adapt or manage oneself. (Tr. 100) She further opined that Ruggles could understanding and remember simple, 1-3 step instructions in an unskilled work environment; carry out simple (1-2 step) tasks, maintain attention, make simple decisions, and adequately adhere to a schedule; engage in brief, superficial interactions with others. (Tr. 103-04)

6

## C. Function Reports

Ruggles completed a Function Report dated March 27, 2021, stating she could not work due to an inability to sit or stand for long periods, difficulty concentrating due to pain, an inability to lift or bend, and weakness. (Tr. 271-278) She expressed that she lived with her sister who helped her with various tasks such as styling her hair and cooking. (Tr. 272) She reported she did not need reminders to take care of personal need or take medicine, and that she could handle money without assistance. (Tr. 273) She noted that she drove "when important," because she could not sit long. (Tr. 274) When asked how well she gets along with authority figures she stated, "Always very good." (Tr. 276) She reported the only assistive device she uses is glasses and that she was currently taking Zoloft and Tramadol for her impairments. (Tr. 277)

In October 2021, Ruggles's sister, Norma Hoyt, completed a Third-Party Report. (Tr. 303-310). Hoyt noted that she lived with Ruggles but was in the hospital at that time she filled out the report. (Tr. 303) She opined that Ruggles could not work because she could not sit or stand for long, experienced constant pain, needed help with daily activities; had sleep difficulties and anxiety. (Tr. 334) She stated Ruggles could make small cold meals once or twice a week. (Tr. 305)  She also stated that Ruggles was forgetful, lack concentration, was depressed and anxious. (Tr. 307-09)

## D. Hearing Testimony

On November 12, 2021 ALJ Earl Ashford held a telephonic hearing on Ruggles' applications. (Tr. 37-66) Ruggles, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*)  During the hearing, Ruggles testified to the following:

- She drives on a limited basis and only for short distances due to difficulty sitting, having a hard time getting out of the vehicle, and panic attacks. (Tr. 41) She previously worked as a metal finisher and crane operator; a car salesperson; a produce loader and packer; a car parts molder; and an inventory control worker (Tr. 42-47) She stated that she could not work due to an inability to sit longer than 10-

7

15 minutes, inability to walk more than half a city block, inability to stand more than ten minutes, urinary issues, and inability to squat. (Tr. 47-51)

- During questioning from her counsel, Ruggles testified that she fell while moving a ladder to the side a year prior. (Tr. 51-52) She stated she has limited grip strength and pain when raising her right shoulder. (Tr. 52) Ruggles stated depression and anxiety would affect her ability to work. (Tr. 53) She also noted problems with focus and concentration in her job as an inventory control worker. (Tr. 53-54) She initially stated she would miscount the inventory by half, but when questioned by the ALJ, she stated her miscounting would be closer to ten percent. (Tr. 54)

VE Renee Skalij also testified at the hearing. The VE stated that Ruggles' past work was classified as follows: metal finisher and painter; painter, transportation equipment; car sales; inventory clerk; sorter, food products. (Tr. 56)

The ALJ posed four hypothetical scenarios to the VE about whether an individual of Ruggles' age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Light work: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching ad crawling; occasional use of the bilateral lower extremities for operation of foot controls; manipulative limitation of frequent use of the bilateral upper extremities for reaching, handling, and fingering; must avoid more than occasional concentrated exposure to hazards, such as dangerous, moving machinery and unprotected heights; limited to simple, routine and repetitive tasks in a work environment free from fast-paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions with few, if any, workplace changes; occasional interaction with the general public, co-workers, and supervisors. (Tr. 57)
   - The VE testified the individual could perform past work as a food sorter, as it is typically performed, but could not work in any of Ruggles' other past jobs. (Tr. 58) The VE also stated the individual could perform work as a cafeteria attendant, hand packager, and an office helper. (Tr. 59)

2. The ALJ then added to hypothetical #1 that the individual would need a sit-stand option needing to sit or stand, alternating position for one or two minutes, in the immediate vicinity of the workstation, no more frequently than every 30 minutes. (Tr. 59)
   - The VE testified that the office helper and cafeteria attendant jobs would remain with reduced job numbers. (Tr. 60)

3. The ALJ then asked the VE to assume the same limitations as in hypothetical #1 and #2 but switch light work to sedentary exertion. (Tr. 60-61)

8

- The VE testified that the following jobs would be available: document preparer and address clerk. (Tr. 61)

4. Sedentary work: able to sit or stand, alternating position for no more frequently than every ten minutes; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching and crawling; occasional use of the bilateral lower extremities for operation of foot controls; occasional use of a cane for ambulation and standing; occasional use of the bilateral upper extremities for reaching, handling and fingering; no more than occasional concentrated exposure to hazards, such as dangerous, moving machinery and unprotected heights; occasional interaction with the general public, co-workers, and supervisors; permission to take five extra breaks of 20 minutes each, per eight-hour work shift, in addition to regularly scheduled breaks consistency absent more than four days per month, allowed to consistently be off-task more than 25 percent of the work period; unable to work even low-stress jobs, sit for less than 2 hours and stand or walk, in combination, for less than 2 hours. (Tr. 61-62)

- The VE stated there would be no work for such a hypothetical individual. (Tr. 62)

The VE further testified that, in general, the tolerance for off-task worktime is up to 10% of the day and the tolerance for absenteeism is 1-2 absences a month during a short probation period and less than 1 absence a month on an ongoing and consistent basis. (Tr. 62-63) The VE stated that her testimony differed from the DOT and SOC with regard to off-task time and absenteeism, as well as the sit-stand option. (Tr. 63) For those items, the VE based her testimony on her experience and education. (*Id.*) Ruggles' counsel then questioned the VE, asking whether during a 30-day period a hypothetical individual having no more than brief interactions with co-workers and supervisors, would impact their ability to be trained for work. (Tr. 64) The VE responded that, during the first 30 days interactions during training would be more than brief. (Tr. 65)

### III.   STANDARD FOR DISABILITY

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.  The claimant has not engaged in substantial gainful activity since September 23, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar/lumbar spinal stenosis; dysthymia/major depressive disorder/bipolar disorder; posttraumatic stress disorder (PTSD); and anxiety. (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; occasional use of the bilateral lower extremities for operation of foot controls; and frequent use of the bilateral upper extremities for reaching, handling, and fingering. The claimant must avoid more than occasional, concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions, with few if any workplace changes. Occasional interaction with the general public, coworkers, and supervisors.

6.    The claimant is capable of performing past relevant work as a Sorter (Dictionary of Occupational Titles (DOT) Code 529.687-186). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 23, 2020,through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 12-32)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as

"'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI.  ANALYSIS

Ruggles presents three assignments of error. (Doc. No. 7 at 1) First, Ruggles argues that the ALJ "erred when he failed to find that the opinions of the treating sources were consistent with and supported by the medical evidence and failed to incorporate the stated limitations into his RFC." (*Id.*) Second, Ruggles contends that the "ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Ruggles's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis." (*Id.*) Third, Ruggles argues that the "ALJ committed harmful error at Steps Four and Five of the Sequential Evaluation when he improperly found that Ruggles could perform her past work as a sorter." (*Id.*)

### A.    Treating Source

Ruggles first asserts that remand is required because the ALJ erred in finding Dr. Kaple's opinion inconsistent with his treatment notes. (Doc. No. 7 at 9-10) Ruggles asserts the ALJ's finding

was not supported by the record. (*Id.*) She cites various records documenting pain and depression, as well as two CT scans. (*Id.*)  The Commissioner counters that Ruggles has not identified any facts or law to support remand under the deferential standard of review. (Doc. No. 11 at 10).

### 1.   Relevant Law

Since Ruggles claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 416.920c(a), (c)(1)-(5). However, the regulations specify that supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2). With regard to these factors the regulations state:

> The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how

we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(*Id.*)

### 2. Analysis

Dr. Kaple completed a physical medical source statement on October 19, 2021. (Tr. 589-92) Dr. Kaple opined Ruggles could only sit for 5-10 minutes and stand for 10 minutes before needing to switch positions; could sit and stand/walk for less than 2 hours in an 8-hour working day; needed to walk for at least 2 minutes every 30 minutes; would need 4-5 unscheduled breaks a day for 10-20 minutes; needed at cane at times; could rarely carry or lift less than 10 pounds; had significant reaching, handling, and fingering limitations; would be off-task 25% or more of the day; would be incapable of even "low stress" work; and would be absent from work more than 4 times per month. (*Id.*) Dr. Kaple listed diagnoses of fibromyalgia, DDD cervical and lumber spines; severe degenerative osteoarthritis; and right thumb surgery. (Tr. 589) Under clinical findings and objective signs, Dr. Kaple listed "Pain, has to reposition often [for] standing and sitting." (*Id.*) With regard to treatment, Dr. Kaple listed "incapacitating" right and left hand surgery in 2015 and epidural injections to cervical spine (but stated she could no longer afford injections). (*Id.*) Dr. Kaple further noted that the following caused an inability to work: depression, fibromyalgia, no strength for grip, back/neck pain, and weakness fatigue. (Tr. 592) In addressing, Dr. Kaple's opinion, the ALJ stated:

> The undersigned finds the opinion of Dr. Kaple to be unpersuasive. In making this finding, the undersigned notes that his opinion is inconsistent with his own medical records, which indicate that the claimant is responsive to medications for her chronic back and neck pains. Additionally, the undersigned notes that the opinion of Dr. Kaple is inconsistent with reports that the claimant has been taking care of her sister while she had COVID. The opinion of Dr. Kaple is also inconsistent with the treatment notes from the Fisher Titus Medical Center, which show that the claimant was climbing ladders as recently as May 2021, has been ambulatory without the use of cane, and has had multiple CT scans showing stable neck, thoracic, and lumbar spinal changes consistent with only mild to

15

moderate degenerative disc disease. Therefore, based upon the foregoing, the undersigned finds the opinion of Dr. Kaple to be unpersuasive.

(Tr. 27)  Substantial evidence supports the ALJ's findings that Dr. Kaple's treatment notes were inconsistent with his opinion.

Substantial evidence also supports the ALJ's finding that Dr. Kaple's opinion was inconsistent with his treatment notes regarding Ruggles' physical impairments. Dr. Kaple's treatment notes often recorded normal physical examinations and improvement with treatment. In January 2021, Ruggles treated with Dr. Kaple and complained of back and neck pain after a fall. (Tr. 438) On exam, she exhibited tenderness and full range of motion with reported difficulty, but otherwise normal results were noted. (*Id.*) In February 2021, Ruggles reported back, shoulder, and neck pain since her January fall. (Tr. 449) The objective exam was normal other than reduced grip strength (4/5 with the left hand). (*Id.*) Dr. Kaple prescribed a steroid and recommended exercise and for Ruggles to inquire about pain injections. (Tr. 451) On May 11, 2021, it was noted that Ruggles was trying to be more active and gain some strength; tramadol reportedly helped with her pain; she had a new hobby refurbishing furniture; and an objective exam yielded normal results. (Tr. 568) Ruggles returned to Dr. Kaple 13 days later due to poison ivy. (Tr. 571) Other than the rash, Dr. Kaple's exam again yielded normal results and it was noted that Ruggles had no reported back or joint pain at that time. (*Id.*) In June 2021, Ruggles told Dr. Kaple that her back was better after relaxing over the past couple of weeks, though a physical exam noted some guarding and tenderness. (Tr. 574) It was also noted her DDD was improving with stretches and exercise. (Tr. 575) In July 2021, Ruggles reported her back pain had mildly improved and reported doing exercises and stretches. (Tr. 577) A physical exam yielded normal results and Dr. Kaple again noted that her DDD was improved due to weight loss and exercise. (*Id.*) Dr. Kaple recommended Ruggles continue with her weight loss and exercise plan. (Tr. 578) In August 2021,

16

Ruggles reported continued neck and back pain and left shoulder strain. (Tr. 580) A physical examination recorded normal results and Dr. Kaple noted that Ruggles' had a "marked improvement" in physical pain with exercise and use of an inversion table. [3] (Tr. 581-82) Accordingly, substantial evidence supports the ALJ's finding that the severity of Dr. Kaple's opined physical limitations was not entirely consistent with his treatment notes which documented improvement with treatment and many normal objective examinations.

Substantial evidence also supports the ALJ's finding that Dr. Kaple's opinion was inconsistent with his treatment notes as it related to her mental health impairments. The ALJ stated that "despite the claimant's history of mental health issues, treatment notes from Dr. Kaple's office show that she has had only minimal treatment for depression and anxiety….[and] has not had any significant episodes of decompensation." (Tr. 29) The month prior to Ruggles' alleged onset date, in August 2020, Dr. Kaple had taken Ruggles off of Zoloft due to possible gastrointestinal side effects and the fact that she reported she was no longer depressed. (Tr. 382-85). Six months later, in February 2021, Ruggles reported feeling depressed and Dr. Kaple recommended restarting Zoloft. (Tr. 450-51) A few months after restarting Zoloft, Ruggles reported that her depression was "markedly improved" with the medication. (Tr. 568) Later that same month, May 2021, Dr. Kaple noted that Ruggles had no depression, mood swings, or sleeping problems. (Tr. 571) In June 2021, Dr. Kaple again recorded that Ruggles depression has "markedly improved" over the last several months, though she was struggling with the death of a

---

[3] Ruggles argues that the ALJ's finding that Dr. Kaple's opinion was "inconsistent with *his own medical records*…was in error and was not supported by the record." (Doc. No. 7 at 10) (emphasis added) Ruggles then goes on to cite various treatment notes. However, most of the items she cites are not Dr. Kaple's treatment notes. Of the three treatment notes she cites, February 2021, June 2021, and August 2021, examinations largely yielded normal results and demonstrated improvements as detailed. (Tr. 449, 575, 580) Ruggles assertion that the records "do not document improvement as incorrectly alleged by the ALJ" is also unsupported by the record. Just prior to his October 2021 opinion, Dr. Kaple stated Ruggles was "improving" in June 2021 and showed "marked improvement" on August 2021. Thus, the three treatment notes Ruggles cites do not support her contention that the ALJ erred.

family member at that time. (Tr. 573) In July 2021, Ruggles reported more energy. (Tr. 577)

Mental status exams with Dr. Kaple recorded normal results. (Tr. 450, 568, 571, 574, 578)

Ruggles fails to point to any abnormal mental status exams with Dr. Kaple. Thus, substantial

evidence supports the ALJ's determination that Dr. Kaple's mental health related findings were

inconsistent with his treatment notes.

   In addition to inconsistency with this own treatment notes, the ALJ also found Dr. Kaple's

report was inconsistent with "reports that the claimant has been taking care of her sister while she

had COVID;" "treatment notes from the Fisher Titus Medical Center, which show that the

claimant was climbing ladders as recently as May 2021, has been ambulatory without the use of

cane, and has had multiple CT scans showing stable neck, thoracic, and lumbar spinal changes

consistent with only mild to moderate degenerative disc disease." (Tr. 27)  Ruggles does not

address these findings. However, Ruggles asserts that the ALJ ignored other "contrary evidence

establishing support and consistency" with the opinion. (Doc. No. 7 at 11-12) However, there is

no indication the ALJ ignored these records. For example, Ruggles cites CT scans from January

and June 2021 as "contrary evidence" that the ALJ ignored. Yet, the ALJ discussed this evidence

in detail noting that in January 2021:

> [Ruggles] was then referred for diagnostic CT scans of the cervical, lumbar, and thoracic
> spine; however, the results of the images failed to show any evidence of acute findings.
> She was then treated with Percocet for her pain and was recommended to follow up for
> monitoring. (*Id*., p. 5). The undersigned notes that the images of the claimant's neck and
> back showed moderate degenerative changed at C5-6 with mild to moderate canal spinal
> stenosis and left neural foraminal narrowing, mild degenerative changes in the thoracic
> spinal endplates without significant spinal canal stenosis or evidence of herniations, and
> the images of the lumbar spine showed some mild S-shaped scoliosis and moderate
> degenerative changes without acute findings. (*Id*., p. 6-8).

(Tr. 25) Regarding the July 2021 CT scan the ALJ stated:

> The undersigned notes that the claimant returned to the hospital on July 21, 2021, with
> complaints of exacerbated lower back pains after slipping and falling on the floor. (*Id*., p.

18

71). She was then referred for additional CT scans of the neck, thoracic, and lumbar spine; however, the images again failed to show any evidence of acute abnormalities. (*Id.*, p. 73-75). For treatment, she was continued on medications for a neck strain, a closed head injury without loss of consciousness, and for complaints of paresthesias. (*Id.*, p. 72-73).

(Tr. 26) As noted earlier, the ALJ also summarized Ruggles' multiple CT scans stating that they showed, "stable neck, thoracic, and lumbar spinal changes consistent with only mild to moderate degenerative disc disease." (Tr. 27) Ruggles has not shown that this finding is in error. Accordingly, Ruggles' assertion that the ALJ ignored contrary evidence is not borne out by the record.[4]

Ruggles contention that the ALJ ignored evidence is not accurate. Thus, her argument is essentially that the ALJ should have weighed the record evidence in a different manner. This Court is not permitted to do so. As the Sixth Circuit has explained, claims that an ALJ's supportability and consistency discussion was insufficient, superficial, or lacked support in the record are "veiled attempt to have us reweigh the evidence." *Pettit v. Comm'r of Soc. Sec.,* No.

---

[4] Ruggles also contends that the ALJ incorrectly interpreted a state agency physician's finding that Ruggles was capable of brief superficial interactions with others as occasional interaction. Ruggles fails to make a separate argument relative to the state agency physician's opinion. Instead, it is included as an aside in the middle of her argument that the ALJ erred in her handling of Dr. Kaple's opinion. Ruggles fails to support her contention with any legal authority or further developed argumentation. As this Court has previously found, "Absent..any attempt to develop an argument to support these conclusory statements…The court cannot take such a conclusory and undeveloped assertions and transform them into a substantive argument on Plaintiff's behalf without improperly becoming an advocate for Plaintiff." *Lovelace v. Kijakazi*, No. 1:20CV00788, 2021 WL 4441606, at *7–8 (N.D. Ohio Sept. 28, 2021). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.' " *Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument). Thus, the court deems this undeveloped argument waived. The Court further notes that the ALJ found the state agency opinion only "partially persuasive," and although Ruggles fails to develop her argument or cite legal authority in support, there is at least some authority to the contrary. *See e.g., Reeves v. Comm'r of Soc. Sec.,* 618 F. App'x 267, 275 (6th Cir. 2015) ) (holding that the ALJ accounted for a state agency psychologist's opinion that the claimant could "relate to a few familiar others on a superficial basis" by limiting the claimant's RFC to "only occasional interaction with the public."); *Cox v. Comm'r of Soc. Sec.,* No. 1:21-CV-01250, 2022 WL 6255603, at *13-17 (N.D. Ohio July 29, 2022), *report and recommendation adopted,* No. 1:21 CV 1250, 2022 WL 4102741 (N.D. Ohio Sept. 8, 2022) (same). As Ruggles fails to further develop her contention, and there is at least some authority to the contrary, the Court declines to make a substantive argument on her behalf. Thus, her argument is waived.

22-3826, 2023 WL 3200582, at *2 (6th Cir. May 2, 2023) citing *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) The ALJ engaged in a supportability and consistency discussion, supported by substantial evidence. The record does not support Ruggles claim that the ALJ ignored evidence. Thus, the Court will not engage in a reweighing of the evidence.

Based on the above, Ruggles first assignment of error is not well-taken.

**B.      SSR 16-3p evaluation of symptoms**

In her second assignment of error, Ruggles argues that the ALJ erred in finding that her statements regarding the severity of her symptoms were not entirely consistent with the medical evidence. (Doc. No. 7 at 17) She argues the ALJ's error is a violation of Social Security Ruling 16-3p. (Doc. No. 7 at 17) The Commissioner asserts that Ruggles argument is without merit because Ruggles "does not cite any regulation or fact that was overlooked by the ALJ [and] does not confront key facts and evidence that the ALJ cited in support of his findings." (Doc. No. 11 at 10)

**1.   Relevant Law**

Social Security Ruling 16-3p provides that an "individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P (S.S.A. Oct. 25, 2017) Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475–76 (6th Cir.2003). In evaluating a claimant's allegations of impairment-related symptoms, Agency regulations proscribe a two-step process. First, the ALJ must determine where there is an underlying medically determinable physical or mental impairments that could reasonably be expected to produce an individual's symptoms. SSR 16-3p at

3. Second, the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities" using all medical and non-medical evidence in the record, as well as the following factors:

1. [A claimant's] daily activities;
2. The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
3. Factors that precipitate or aggravating the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication [a claimant] takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, [a claimant] receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms…;
7. Any other factor concerning [a claimant's] functional limitations and restrictions due to

SSR 16-3p; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

"We accord an ALJ's credibility determinations great weight and deference." *Schmiedebusch v. Comm'r of Soc. Sec. Admin*., 536 F. App'x 637, 649 (6th Cir. 2013). The Court is "limited to evaluating whether ... the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Id.* (*quoting Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003).

### 2. Analysis

The ALJ determined that Ruggles' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record…" (Tr. 29) Ruggles states that the ALJ "failed to support his conclusion with substantial evidence supported by the record, necessitating a remand of this matter." (Doc. No. 7 at 18) Ruggles asserts that, contrary to the ALJ's finding, the medical evidence was consistent with her testimony and her written reports. (*Id.* at 15) Ruggles goes on to list a host of medical records unconnected to any argumentation and then states that she "satisfied the criteria set forth in Ruling 16-3p." (*Id.* at

21

15-16) SSR 16-3p sets forth various factors an ALJ should review in undertaking an evaluation of a claimant's alleged subjective symptoms. SSR 16-3p is not a set of criteria you "satisfy" or meet. Moreover, Ruggles fails to show that the ALJ erred in consideration of these factors.

To the extent Ruggles argues that the ALJ's credibility determination was unsupported by substantial evidence, her argument is unconvincing. Ruggles fails to identify any specific errors the ALJ made in his analysis. A review of the ALJ's decision and the record demonstrates that substantial evidence supports the ALJ's assessment of Ruggles' subjective complaints.

The ALJ found that many objective physical and mental examinations yielded normal results and that Ruggles received only conservative treatment, which conflicted with the severity of symptoms alleged. (Tr. 24-27). For example, the ALJ highlighted a November 2020 emergency room visit for dental pain, that described Ruggles as ambulatory and demonstrated that she "maintained full range of motion in her neck, lower back, and all of her extremities, without evidence of rigidity, tenderness, weakness, numbness, or sensory disturbances. (Tr. 24) The ALJ also noted that Ruggles presented with normal alertness, orientation, and speech. (*Id.*) The ALJ explained that the following month, Ruggles reported difficulties with ambulation, but "was ambulatory without the use of a cane." (Tr. 25) The ALJ stated that on examination Ruggles presented with some decreased range of motion, tenderness, and a slow and steady gait, but noted that Ruggles was "assessed with a lower back strain, for which she was treated with pain medications and was referred for physical therapy." (*Id.*) After a fall in January 2021, Ruggles presented with some tenderness and range of motion difficulty but the remainder of the physical exam "was essentially benign, as was her mental presentation." (*Id.*) The next month Ruggles complained of "diffuse pain and difficulties with turning her neck," the ALJ noted that the physical exam showed no deformities, swelling, "or even limited range of motion." (*Id.*) Ruggles was "then

22

diagnosed with chronic pain and was recommended for a prednisone burst, exercise, and follow up." (*Id.*) As to mental status exams, the ALJ noted mental status exams with normal results (Tr. 24, 25) and Ruggles fails to point to any mental status exams demonstrating abnormal results. (Doc. No. 7 at 16-17) Based on the medical records cited in the parties' briefs, the Court found only one instance of an abnormal mental status exam—the consultative examination. (Tr. 554)

The ALJ's determination that the alleged severity of Ruggles' symptoms was inconsistent with the limited objective findings was proper and supported by the record. The ALJ discussed how the record showed largely normal objective examinations findings. As noted above, only the consultative exam yielded an abnormal mental status examination (i.e., blunted affect and depressed and stable mood). (Tr. 554) All remaining mental status exams contained no noted abnormalities. Similarly, as explained in the prior paragraph, physical examinations often yielded normal objective findings. In addition to examinations, the ALJ pointed out that "multiple CT scans showing stable neck, thoracic, and lumbar spinal changes consistent with only mild to moderate degenerative disc disease." (Tr. 27) A lack of objective examination findings is a proper consideration in reviewing a claimant's allegations of disabling symptoms. See SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); *Kelley v. Comm'r of Soc. Sec.,* No. 1:20-CV-35, 2021 WL 1049874, at *6 (W.D. Mich. Mar. 19, 2021) (Finding that "the ALJ properly considered the objective examination findings in concluding that Plaintiff's alleged symptoms were not entirely consistent with the medical evidence."); *Perrault v. Comm'r of Soc. Sec*., No. 1:14-cv-942, 2015 WL 5592931, at *6 (W.D. Mich. Sept. 22, 2015) ("In evaluating a claimant's credibility with respect to the intensity and persistence of symptoms, the ALJ considers the objective medical evidence."); *see also Moon v. Sullivan,* 923 F.2d 1175, 1182–83 (6th Cir. 1990) (finding that an ALJ "may distrust a claimant's allegations of disabling symptomatology" if the subjective allegations "and the objective medical

evidence contradict each other." )  Thus, the ALJ's finding that Ruggles' allegations regarding the severity of her symptoms was not fully consistent with  the objective medical evidence was proper and supported by the record.

In addition to limited objective evidence, the ALJ also found that Ruggles' conservative treatment was inconsistent with the alleged severity of her symptoms. As summarized in the treatment notes above, the ALJ described the conservative treatment Ruggles was prescribed for her physical impairments consisting of medication, exercise, and physical therapy. The ALJ also stated:

> With respect for the claimant's lower back and neck impairments, the medical records show that despite her multiple reports of falls, she has only required conservative treatment measures since the alleged disability onset date.

(Tr. 29) Regarding her mental impairments, the ALJ similarly stated that "despite the claimant's history of mental health issues, treatment notes from Dr. Kaple's office show that she has had only minimal treatment for depression and anxiety….[and] has not had any significant episodes of decompensation." (Tr. 29) Thus, the ALJ found Ruggles conservative treatment contradicted her reports of disabling symptoms. Courts frequently upheld an ALJ's credibility finding where the ALJ determines that conversative treatment conflicts with claimant's allegations of disabling symptoms. *See e.g. Kepke v. Comm'r of Soc. Sec.,* 636 F. App'x 625, 638 (6th Cir. 2016) (finding the ALJ's determination that claimant's credibility was damaged, in part by conservative treatment, was proper); *Lester v. Soc. Sec. Admin.,* 596 Fed.Appx. 387, 389 (6th Cir.2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r of Soc. Sec.,* 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are

undermined by his non aggressive treatment."). Thus, the ALJ's consideration of Ruggles' conservative treatment  in assessing her reported subjective symptoms was appropriate.

The ALJ also noted that some of Ruggles daily activities suggested contradictions with her allegations. For instance, the ALJ found that Ruggles reported difficulties in understanding, remember, and applying information were, "contrasted by reports that the claimant is able to handle her own money and medications, use a computer for shopping, and is able to do some multistep tasks such as preparing meals." (Tr. 20) The ALJ also noted that at some time during the relevant period Ruggles had "been taking care of her sister while she had COVID," which the ALJ found inconsistent with the reported disabling limitations. (Tr. 27, 589) Further, the ALJ found a note that Ruggles was climbing ladders as late as May 26, 2021, conflicted with the severity of symptoms alleged. (Tr. 26-27) Though Ruggles testified that she was moving the ladder when it fell and did not climb it, the ALJ noted that Ruggles reported to the ED that she had fallen six feet from the ladder. (Tr. 26-27, 51-52, 595) See 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (agency will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence"). Thus the ALJ documented some specific examples of inconsistencies in Ruggles statements related to her daily activities. [5]

As shown above, the ALJ's decision as a whole provides substantial evidence to support the ALJ's determination regarding Ruggles' subjective symptoms. "If substantial evidence

---

[5] "Although the ability to do household [and other] chores is not direct evidence of an ability to do gainful work" under 20 C.F.R. § 404.1572, "[a]n ALJ may ... consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Commr. of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)). *See also Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain."); *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, [the plaintiff] remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating").

supports the ALJ's decision, this [c]ourt defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 121 (6th Cir. 2016) *citing Blakley*, 581 F.3d at 406 (internal quotation marks omitted). "This is so because there is a 'zone of choice' within which the Commissioner can act, without fear of court inference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Here the ALJ acted with that zone of choice.

"The claimant's credibility may be properly discounted 'to a certain degree ... where [an administrative law judge] finds contradictions among the medical reports, claimant's testimony, and other evidence.' " *Masters v. Comm'r of Soc. Sec.,* 707 F. App'x 374, 380 (6th Cir. 2017) (*quoting Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004)). Here there were contradictions among the evidence and the ALJ found Ruggles' subjective allegations not entirely consistent with the record because evidence indicated that Ruggles treated conservatively for her mental and physical impairments, objective examinations often yielded normal results, and some of Ruggles reported daily activities contradicted her allegations. This constitutes substantial evidence to support the ALJ's decision. "An ALJ is in the best position to observe witnesses' demeanor and to make an appropriate evaluation as to their credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997). Therefore, an ALJ's credibility assessment will not be disturbed "absent compelling reason." Smith v. Halter, 307 F.3d 377, 379 (6th Cir.2001); Walters, 127 F.3d at 531 (recognizing ALJ's credibility assessment is entitled to "great weight and deference") The ALJ's credibility finding is supported by substantial evidence[6] and Ruggles fails

---

[6] Ruggles cites to *Grames v. Comm'r of Soc. Sec.*, 815 F. App'x 820, 826 (6th Cir. 2019) in support of her argument that the ALJ's decision is not supported by substantial evidence. (Doc. No. 7 at 18) However, *Grames* is inapplicable because, in that case, the Sixth Circuit found that several of the ALJ's factual findings were contradicted by material record evidence that the ALJ failed to acknowledge. Ruggles has not demonstrated that here.

to offer a "compelling reason" to disturb the ALJ's determination. Accordingly, remand is not required based on Ruggles second assignment of error.

## C.    RFC

In her final assignment of error, Ruggles contends that the ALJ erred in finding she could perform her past relevant work as a sorter. (Doc. No. 7 at 19) Supported by the testimony of a vocational expert, the ALJ found Ruggles could perform her past relevant work as a sorter as it is generally performed in the national economy (Tr. 29-30). See 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2) (allowing ALJs to cite vocational expert testimony in assessing ability to perform past relevant work). Ruggles contends that the ALJ's finding is improper because her impairments are incompatible with the finding that she can perform "light work," due to her reported difficulties standing and walking. (*Id.* at 20) Ruggles asserts that the ALJ failed to "include the restrictions which were supported by the record." (Doc. No. 7 at 22) In support Ruggles highlights the following evidence: Dr. Kaple's opinion, a function report from her sister, and CT scans.  (Doc. No. 7 at 21) However, the ALJ found that the opinions of Dr. Kaple and Ruggles' sister were not fully supported by the record. (Tr. 23, 27) As noted earlier, the ALJ also considered Ruggles' CT scans and found that Ruggles "has had multiple CT scans showing stable neck, thoracic, and lumbar spinal changes consistent with only mild to moderate degenerative disc disease." (Tr. 27)

As Ruggles acknowledges, the ALJ "may rely on the testimony of a vocational witness in response to a hypothetical question, but only if the question accurately portrays the individual's physical and mental impairments." (Doc. No. 7 at 20 *citing Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2006). Ruggles argues that the ALJ's question did not accurately portray her limitations because she contends that the opinions or Dr. Kaple and Ruggles' sister, along with the CT scans support additional sitting and standing limitations. However, he "ALJ [is] required to

incorporate only those limitations that he or she accepted as credible [in the RFC]." *Masters v. Comm'r*, 707 F. App'x 374, 380 (6th Cir. 2017) (citing *Casey v. Sec'y*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible."); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) (citations omitted); *Turcus v. Soc. Sec. Admin.,* 110 Fed.Appx. 630, 633 (6th Cir.2004) ("The ALJ is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions."). The ALJ did not find the opinions of Dr. Kaple and Ruggles' sister entirely credible and, thus, did not fully incorporate their opinions in the RFC. Ruggles has not shown that the ALJ's persuasiveness finding with regard to Dr. Kaple or Ruggles' sister was in error. Further, Ruggles fails to show that the ALJ's CT scan determination was erroneous. And she has not shown how the CT scan results obligate the ALJ to find further limitations. Thus, Ruggles has not demonstrated that the ALJ erred in finding she could perform her past relevant work as a sorter.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: July 5, 2023

       *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**